FILED

E-FILING

2008 JUL -8  A 10: 44

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

ADR

1   PETER SCHWARTZ (SBN: 109859)
2   CHRISTOPHER R. WAGNER (SBN: 162092)
    GORDON & REES LLP
3   633 West Fifth Street, Suite 4900
    Los Angeles, CA 90071
    Telephone: (213) 576-5000
4   Facsimile: (213) 680-4470
    Email: pschwartz@gordonrees.com
5   Email: cwagner@gordonrees.com
6   Attorneys for Plaintiff
7   INDIAN HARBOR INSURANCE COMPANY

8              UNITED STATES DISTRICT COURT

9             NORTHERN DISTRICT OF CALIFORNIA

10                  SAN JOSE DIVISION

11  INDIAN HARBOR INSURANCE          CASE NO. C08  03272
    COMPANY, a North Dakota
12  corporation,
                                     COMPLAINT FOR
13                    Plaintiff,     DECLARATORY RELIEF  PVT

14        vs.

15  CALABASAS FUNDING
    CORPORATION dba CFC
16  MORTGAGE BANKERS, a California
    corporation,
17
                      Defendant.
18

19        Indian Harbor Insurance Company ("Indian Harbor") brings this Complaint

20  against Calabasas Funding Corporation dba CFC Mortgage Bankers ("CFC") and

21  alleges as follows:

22                    **NATURE OF THE ACTION**

23        1.    This is an action for declaratory relief requesting a judgment declaring

24  the respective rights of the parties in connection with an actual controversy arising

25  under a policy of liability insurance issued by Indian Harbor to CFC.

26                       **THE PARTIES**

27        2.    Plaintiff Indian Harbor is a North Dakota corporation with its

28  principal place of business in Connecticut and is an insurer authorized to conduct

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

ECS/1648994/5633915v.1

1

1  and conducting business in the State of California.

2      3.    CFC is, and at all times mentioned herein was, a corporation

3  organized and existing under the laws of the State of California with its principal

4  place of business in California. Indian Harbor is informed and believes that CFC

5  is, and all times mentioned herein was, a mortgage broker licensed by the State of

6  California.

7  **JURISDICTION**

8      4.    This court has jurisdiction over this matter pursuant to the court's

9  diversity jurisdiction under 28 U.S.C. § 1332. The amount in controversy exceeds

10  the sum or value of $75,000, exclusive of interest and costs.

11  **VENUE**

12      5.    Pursuant to 28 U.S.C. § 1391(a)(2), venue is proper in the Northern

13  District of California in that the defendant is subject to personal jurisdiction in this

14  District at the time the action is commenced and because a substantial part of the

15  events or omissions on which Plaintiff's claims are based occurred in this District.

16  **INTRADISTRICT ASSIGNMENT**

17      6.    Assignment to the U.S. District Court, Northern District of California,

18  San Jose Division is appropriate because a substantial part of the events giving rise

19  to this action occurred in the County of Santa Clara.

20  **STATEMENT OF FACTS**

21      7.    Indian Harbor issued a policy of insurance to CFC, numbered

22  MPP001614903 that was in effect from March 23, 2007 to March 23, 2008 (the

23  "Policy"). A copy of the Policy is attached hereto as Exhibit A and is incorporated

24  herein.

25      8.    On or about November 16, 2007, First Franklin Financial Corporation

26  ("First Franklin"), a mortgage lender, filed a lawsuit in the Superior Court of the

27  State of California, County of Santa Clara, against CFC, among others, styled *First*

28  *Franklin Financial Corporation v. Brian Troop, et al.*, Superior Court Case No.

Gordon & Rees LLP<br>633 West Fifth Street<br>Suite 4900<br>Los Angeles, CA 90071

2<br>COMPLAINT FOR DECLARATORY RELIEF

1    107CV099104 (the "Underlying Action"). The Underlying Action asserts three

2    causes of action against CFC: (1) breach of written broker agreement, (2) implied

3    indemnity, and (3) total equitable indemnity. First Franklin alleges in the

4    Underlying Action that CFC breached its agreement to warrant the accuracy of

5    information included on two loan applications submitted by CFC, that were

6    subsequently approved by First Franklin.

7    9.    On or about January 8, 2008, CFC requested that Indian Harbor

8    provide defense and indemnity of the Underlying Action pursuant to the terms of

9    the Policy.

10    10.    In response to CFC's tender of the Underlying Action under the

11    Policy, and by correspondence dated June 9, 2008, Indian Harbor agreed to fund

12    reasonable and necessary defense costs incurred after the date of tender, subject to

13    a reservation of rights.

14    **FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF – DUTY TO**

15    **DEFEND**

16    **(No Duty to Defend the Underlying Action)**

17    11.    Indian Harbor incorporates by reference the allegations set forth in

18    paragraphs 1 through 10 as though fully set forth herein.

19    12.    An actual controversy has arisen between the parties with regard to

20    the extent of their respective rights and obligations under the Policy and applicable

21    law. Indian Harbor contends that it has no duty to defend CFC with respect to the

22    Underlying Action based upon the Policy's contractual liability exclusion.

23    Specifically, the Policy excludes coverage for any claim "[b]ased on or arising out

24    of liability of others assumed by the Insured under any contract or agreement,

25    unless such liability would have attached to the Insured even in the absence of such

26    contract or agreement."

27    13.    Notwithstanding the above-referenced exclusions, CFC contends that

28    Indian Harbor owes a duty to defend with respect to the Underlying Action.

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

3

14.    Indian Harbor desires a judicial determination of the respective rights and duties of the parties, including a declaration regarding the contractual liability exclusion and other policy terms.  Such judicial determinations and declarations are necessary and proper at this time so that the parties will be bound by the same interpretation of the Policy and applicable law.

## SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF – DUTY TO INDEMNIFY

### (No Duty to Indemnify Against the Underlying Action)

15.    Indian Harbor incorporates by reference the allegations set forth in paragraphs 1 through 14 as though fully set forth herein.

16.    An actual controversy has arisen between the parties with regard to the extent of their respective rights and obligations under the Policy and applicable law.  Indian Harbor contends that it has no duty to indemnify CFC with respect to the Underlying Action based upon the Policy's contractual liability exclusion.  Specifically, the Policy excludes coverage for any claim "[b]ased on or arising out of liability of others assumed by the Insured under any contract or agreement, unless such liability would have attached to the Insured even in the absence of such contract or agreement."

17.    Notwithstanding the above-referenced exclusion, CFC contends that Indian Harbor owes a duty to indemnify with respect to the Underlying Action.

18.    Indian Harbor desires a judicial determination of the respective rights and duties of the parties, including a declaration regarding the contractual liability exclusion and other policy terms.  Such judicial determinations and declarations are necessary and proper at this time so that the parties will be bound by the same interpretation of the Policy and applicable law.

### REQUEST FOR RELIEF

WHEREFORE, plaintiff Indian Harbor prays for the entry of judgment in its favor and against CFC, as follows:

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA 90071

4

1.     That this Court enter a declaratory judgment against CFC that Indian Harbor has no duty to defend CFC against the Underlying Action.

2.     That this Court enter a declaratory judgment against CFC that Indian Harbor has no duty to indemnify CFC against the Underlying Action.

3.     For such other relief as this Court deems just and proper under the circumstances.

Dated: July 7, 2008                                    GORDON & REES LLP


By: _____
PETER SCHWARTZ
CHRISTOPHER WAGNER
Attorneys for Plaintiff
INDIAN HARBOR INSURANCE
COMPANY

Gordon & Rees LLP
633 West Fifth Street
Suite 4900
Los Angeles, CA  90071

# ERRORS AND OMISSIONS DECLARATIONS

## THIS IS BOTH A CLAIMS MADE AND REPORTED INSURANCE POLICY. PLEASE READ IT CAREFULLY.

**PRODUCER:** E.L.M. Insurance Brokers, Inc.
1990 E Grand Avenue Suite 210
PO Box 2668
El Segundo, CA 902451768

**POLICY NUMBER:** MPP001614903

**PRODUCER #:** 12304

**RENEWAL OF:** MPP001614902

THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.

**Item 1.    NAMED INSURED:**
CALABASAS FUNDING CORP., DBA CFC MORTGAGE BANKERS

**Item 2.    ADDRESS:**
3200 LOS ANGELES AVENUE #23
SIMI VALLEY, CA 93065

**Item 3.    POLICY PERIOD:    FROM  March 23, 2007 TO  March 23, 2008**

12:01 A.M. Standard Time at the address of the **Named Insured** as stated herein.

**Item 4.    LIMITS OF LIABILITY** (Inclusive of **claim expenses**):

$1,000,000    Each **Claim**
$1,000,000    Policy Aggregate

**Item 5.    DEDUCTIBLE** (Inclusive of **claim expenses**): $15,000    Each **Claim**

**Item 6.    PREMIUM:** $ 6,147

**Item 7.    PROFESSIONAL SERVICES:**
Mortgage Banker

**Item 8.    RETROACTIVE DATE** (if applicable): Full for the first $500,000 each claim/policy period aggregate; and March 23, 2005 for the $500,000 each claim/policy period aggregate excess of $500,000 each claim/policy period aggregate

**Item 9.    ENDORSEMENTS ATTACHED AT POLICY EFFECTIVE DATE:**

| Endorsement Number | Endorsement Form | Endorsement Title |
|---|---|---|
| | XLSP-MPL-PF | Errors and Omissions Policy Form |
| Endorsement No. 001 | PN CW 02 05 05 | Notice To Policyholders - Privacy Policy |

IHIC-XLSP-MPLPD (12/05)
©, 2005, XL America, Inc.

Printed in U.S.A.

6

| Endorsement Number | Endorsement Form | Endorsement Title |
|---|---|---|
| Endorsement No. 002 | PN CW 05 01 06 | Notice To Policyholders - U.S. Treasury Department's Office Of Foreign Assets Control ("OFAC") |
| Endorsement No. 003 | PN CA 02 04 05 | Notice To Policyholders - California |
| Endorsement No. 004 | IL MP 9104 0906 IHIC | In Witness Endorsement |
| Endorsement No. 005 | XLSPMPL105 (8/03) | Amendatory Endorsement |
| Endorsement No. 006 | XLSPMPL145 (8/03) | Mold Exclusion Endorsement |
| Endorsement No. 007 | IHIC-CASOP 02 07 | California Service Of Process |

(Authorized Representative)

David B. Duclos
**President**

Kenneth P. Meagher
Secretary

WILL        04/24/2007
CARR        0005058730

IHIC-XLSP-MPLPD (12/05)
©, 2005, XL America, Inc.

Printed in U.S.A.



**INSURANCE**

Administrative Offices:
Seaview House
70 Seaview Avenue
Stamford, CT  06902-6040
(800)688-1840

Statutory Offices:
316 North 5th Street
Bismarck, ND  58501
(800) 688-1840

---

# ERRORS AND OMISSIONS POLICY

**THIS IS A CLAIMS MADE AND REPORTED POLICY. THIS POLICY APPLIES ONLY TO THOSE CLAIMS THAT ARE FIRST MADE AGAINST THE INSURED AND REPORTED IN WRITING TO THE COMPANY DURING THE POLICY PERIOD. CLAIM EXPENSES ARE WITHIN AND REDUCE THE LIMIT OF LIABILITY. PLEASE REVIEW THIS POLICY CAREFULLY.**

Words and phrases that appear in **bold** print have special meanings that are defined in Section III., **DEFINITIONS**.

## I.  INSURING AGREEMENTS

### A.  Coverage

The **Company** will pay on behalf of the **Insured** all sums in excess of the deductible that the **Insured** becomes legally obligated to pay as **damages** and **claim expenses** as a result of a **claim** first made against the **Insured** and reported in writing to the **Company** during the **policy period,** by reason of an act or omission including **personal injury** in the performance of **professional services** by the **Insured** or by someone for whom the **Insured** is legally responsible, provided that:

1.  Such act or omission was committed on or subsequent to the **retroactive date** specified in Item 8. in the Declarations; and

2.  Prior to the inception date of this policy no **Insured** had a basis to believe that any such act or omission, or related act or omission, might reasonably be expected to be the basis of a **claim.**

### B.  Defense

The **Company** has the right and duty to defend any **claim** against the **Insured** even if any of the allegations of the **claim** are groundless, false or fraudulent. Defense counsel may be designated by the **Company** or, at the **Company's** option, by the **Insured** with the **Company's** written consent and subject to the **Company's** guidelines.

### C.  Settlement

The **Company** will have the right to make, with the consent of the **Named Insured**, any settlement of a **claim** under this policy. If the **Named Insured** refuses to consent to a settlement within the policy's applicable limit of liability that is recommended by the **Company** and acceptable to the claimant, then the **Company's** limit of liability under this policy will be reduced to the amount of **damages** for which the **claim** could have been settled plus all **claim expenses** incurred up to the time the **Company** made its recommendation, which amount will not exceed the remainder of the limit of liability specified in Section II. A., Limit of Liability - Each **Claim.**

### D.  Exhaustion Of Limits

The **Company** is not obligated to pay any **damages** or **claim expenses** or to defend or continue to defend any **claim** after the applicable limit of liability has been exhausted by the payment of **damages** or **claim**

expenses or any combination thereof; or after the **Company** has deposited the remaining available limit of liability into a court of competent jurisdiction or tendered the remaining available limit of liability to the **Named Insured** or, if applicable, to the excess insurer(s) of the **Named Insured**.

## II. LIMITS OF LIABILITY AND DEDUCTIBLE

### A. Limit of Liability - Each Claim

Subject to paragraph B. below, the **Company's** limit of liability for **damages** and **claim expenses** for each **claim** first made and reported in writing to the **Company** during the **policy period** will not exceed the amount shown in Item 4. in the Declarations for "Each **Claim**."

### B. Limit of Liability - Policy Aggregate

The **Company's** limit of liability for **damages** and **claim expenses** for all **claims** first made and reported in writing to the **Company** during the **policy period** will not exceed the aggregate amount shown in Item 4. in the Declarations as the "Policy Aggregate."

### C. Deductible

The deductible amount shown in Item 5. in the Declarations is the **Insured's** obligation for each **claim** and applies to the payment of **damages** and **claim expenses**. The deductible will be paid by the **Named Insured**. The limits of liability set forth in the Declarations are in addition to and in excess of the deductible.

### D. Early Claim Resolution Incentive

If a **claim** is resolved or concluded, with the consent of the **Named Insured** and the **Company**, as reflected in a settlement agreement, order, dismissal, or judgement, within one (1) year following the date that the **claim** is reported in writing to the **Company**, the **Named Insured** will be reimbursed or credited 50% of the deductible, but not to exceed a maximum reimbursement of $25,000 per **policy period** for all such **claims** resolved or concluded in accordance with this paragraph D.

### E. Multiple Insureds, Claims and Claimants

The limits of liability shown in the Declarations is the maximum amount the **Company** will pay under this policy for **damages** and **claim expenses** regardless of the number of **Insureds**, **claims** made or claimants. **Related claims** made against the **Insured** and reported in writing to the **Company** under this policy or under any renewal of this policy will be considered a single **claim** first made and reported to the **Company** during the **policy period** in which the earliest of the **related claims** was first made and reported in writing to the **Company**.

### F. Supplementary Payments

Supplementary payments are not subject to the deductible and are in addition to the limits of liability.

The **Company** will pay up to $250.00 for loss of earnings to the **Insured** for each day or part of a day the **Insured** is in attendance, at the **Company's** request, at a trial, hearing or arbitration proceeding involving a **claim** against the **Insured**. In no event shall the amount payable hereunder exceed $5,000 per **policy period**.

## III. DEFINITIONS

**Bodily injury** means physical injury, sickness or disease sustained by any person including death resulting from any of these at any time. **Bodily injury** also means mental illness, mental anguish, or emotional distress, pain or suffering, or shock sustained by that person, whether or not resulting from physical injury, sickness, disease or death of any person.

**Claim** means a demand for money or services naming the **Insured** arising out of an act or omission in the performance of **professional services**. A **claim** also includes the service of suit or the institution of an arbitration proceeding against the **Insured**.

**Claim expenses means:**

1.  Fees charged by attorneys designated by the **Company** or designated by the **Insured** with the **Company's** prior written consent;

2.  All other reasonable and necessary fees, costs and expenses resulting from the investigation, adjustment, negotiation, arbitration, mediation, defense or appeal of a **claim**, if incurred by the **Company** or by the **Insured** with the **Company's** prior written consent; and

3.  Premiums on appeal bonds, attachment bonds or similar bonds however, the **Company** is not obligated to apply for or furnish any such bond.

**Claim expenses** will be paid first and will reduce the limit of liability available to pay **damages**. **Claim expenses** do not include fees, costs or expenses of employees or officers of the **Company**, or salaries, loss of earnings or other remuneration by or to any **Insured**.

**Company** means the insurance company named in the Declarations.

**Damages** means any compensatory sum and includes a judgment, award or settlement, provided any settlement is negotiated with the **Company's** written consent, and prejudgment interest awarded against the **Insured** on that part of the judgment the **Company** offers to pay. If the **Company** makes an offer to pay the applicable limits of liability, it will not pay any prejudgment interest based on that period of time after the offer.

**Damages** do not include:

1.  The return, reduction or restitution of fees, expenses or costs for **professional services** performed or to be performed by the **Insured**;

2.  Fines, penalties, forfeitures, or sanctions;

3.  Punitive or exemplary amounts;

4.  The multiplied portion of any multiplied awards;

5.  Injunctive or declaratory relief.

**Insured** means the **Named Insured** and any of the persons or entities listed below but only while in the performance of **professional services** on behalf of the **Named Insured** for clients of the **Named Insured**:

1.  Any subsidiary or newly acquired subsidiary;

2.  Any present or former partner, member, officer, director or employee of the **Named Insured**, a **subsidiary** or a **newly acquired subsidiary**;

3.  Independent contractors but only for **professional services** performed on behalf and at the direction of the **Named Insured** and the **Named Insured** has agreed to provide insurance for the independent contractor's **professional services**;

4.  Any leased employee but only while acting under the direct supervision and exclusively on behalf of the **Named Insured**.

5. The estate, heirs, executors, administrators assigns and legal representatives of an **Insured** in the event of such **Insured's** death, incapacity, insolvency or bankruptcy, but only to the extent that such Insured would have been provided coverage under this policy.

**Named Insured** means the persons or entities specified in Item 1. in the Declarations.

**Newly acquired subsidiary** means any entity newly formed or acquired by the **Named Insured** during the **policy period** in which the **Named Insured** has more than 50% of the legal or beneficial interest, but only upon the conditions that:

1. Within 60 days of such formation or acquisition, the **Named Insured** has provided the **Company** with full particulars of such **newly acquired subsidiary** and the **Company** has agreed in writing to insure such **newly acquired subsidiary**, but the **Company** shall not be required to insure such **newly acquired subsidiary**;

2. The **Named Insured** has paid the additional premium, if any, charged by the **Company** and has agreed to any amendment of the provisions of this policy; and

3. The **Company** will only provide coverage with respect to a **claim** arising out of an act or omission in the performance of **professional services** when the act or omission is committed on or after the date such **newly acquired subsidiary** became a **newly acquired subsidiary** and prior to the date such **newly acquired subsidiary** ceased to be a **newly acquired subsidiary**. An entity ceases to be a **newly acquired subsidiary** under this policy on the date during the **policy period** that the **Named Insured's** legal or beneficial interest in such entity becomes less than 50%.

**Personal injury** means injury other than **bodily injury** arising out of one or more of the following offenses by reason of an act or omission in the performance of **professional services**:

1. False arrest, detention or imprisonment;

2. Malicious prosecution;

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor;

4. a. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   b. Oral or written publication, in any manner, of material that violates a person's right of privacy; except oral or written publication ,in any manner which arises out of advertising, broadcasting or telecasting  activities conducted by or on behalf of any **Insured**.

**Policy period** means the period of time from the effective date shown in Item 3. in the Declarations to the earliest of the date of termination, expiration or cancellation of this policy.

**Pollutants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**Property damage** means:

1. Physical injury to tangible property, including all resulting loss of use of that property; or

2. Loss of use of tangible property that is not physically injured.

**Professional services** means those services specified in Item 7. in the Declarations performed by an **Insured** for others for a fee.

**Related claims** means all **claims** arising out of a single act or omission or related acts or omissions in the performance of **professional services.**

**Retroactive date** means the date shown in Item 8. in the Declarations, on or after which an act or omission must have been committed for coverage under this policy to apply.

**Subsidiary** means any entity of which the **Named Insured** owns, either legally or beneficially, more than a 50% interest in such entity. On the date during the **policy period** that the **Named Insured's** legal or beneficial ownership interest in such entity becomes less than 50%, such entity will cease to be a **subsidiary** under this policy. In such event, coverage will be provided under this policy, but only with respect to acts or omissions committed prior to such date in accordance with all other terms and conditions of this policy. No coverage will be afforded under this policy with respect to **claims** made against an **Insured** based on any act or omission that was committed on or subsequent to such date.

## IV. EXCLUSIONS

This policy does not apply to any **claim**:

A. Based on or arising out of any dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission by an **Insured**. The **Company** will provide the **Insured** with a defense of such **claim** and pay **claim expenses** for any such suit which is brought alleging such dishonest, intentionally wrongful, fraudulent, criminal or malicious act or omission as a single allegation in a multiple allegation suit, provided any one allegation is covered under this policy.. Criminal proceedings are not covered under this policy regardless of the allegations made against the **Insured**;

B. Based on or arising out of **bodily injury** or  **property damage**;

C. Based on or arising out of discrimination, humiliation, harassment, or misconduct including but not limited to **claims** based on an individual's race, creed, color, age, gender, national origin, religion, disability, marital status or sexual preference. The **Company** will provide the **Insured** with a defense of such **claim** and pay **claim expenses** for any suit which is brought alleging such discrimination as a single allegation in a multiple allegation suit, provided any one allegation is covered under this policy;

D. Based on or arising out of **professional services** performed for or by any business enterprise not named in Item 1. in the Declarations if on or after the date or time of the act or omission giving rise to such **claim**:

   1. Any **Insured** controlled, owned, operated or managed such entity; or

   2. Any **Insured** was an owner, partner, member, director, officer or employee of such entity.

   Control of or ownership in a business enterprise is presumed if any **Insured** owned or held 10% or more of the equity and/or debt instruments of such enterprise;

E. By or on behalf of an **Insured** under this policy against any other **Insured** hereunder;

F. Based on or arising out of actual or alleged violation of:

   1. The Employee Retirement Income Security Act of 1974;

   2. The Securities Act of 1933;

   3. The Securities Exchange Act of 1934;

4.  Any state Blue Sky or Securities law;

or any rules, regulations or amendments issued in relation to such acts, or any similar state or federal statutes or regulations, including any **claim** based upon common law principles of liability;

G.  Based on or arising out of, whether suddenly or over a long period of time:

1.  The actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of **pollutants**; or

2.  Any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **pollutants**.

H.  Based on or arising out of liability of others assumed by the **Insured** under any contract or agreement, unless such liability would have attached to the **Insured** even in the absence of such contract or agreement;

I.  Based on or arising out of the gaining of any personal profit or advantage to which the **Insured** is not legally entitled;

J.  Based on or arising out of any anti-trust law violation or any agreement or conspiracy to restrain trade;

K.  Based on, arising out of or related to actual or alleged misappropriation of ideas, information or materials; infringement of copyright, title or slogan; improper gaining or misuse of confidential or proprietary information, materials or trade secrets.

## V.  CONDITIONS

A.  **Reporting of Claims and Potential Claims:**

1.  The **Insured**, as a condition precedent to the obligations of the **Company** under this policy, will give written notice to the **Company** as soon as reasonably possible during the **policy period** of any **claim** made against the **Insured**.

The **Company** further agrees that the **Insured** may have up to, but not to exceed, 60 days after the policy expiration to report in writing to the **Company** a **claim** made against the **Insured** during the **policy period**, if the reporting of such **claim** is as soon as reasonably possible.

2.  If during the **policy period**, any **Insured** becomes aware of any act or omission which may reasonably be expected to be the basis of a **claim** against any **Insured**, including but not limited to any notice, advice or threat, whether written or verbal, that any person or entity intends to hold the **Insured** responsible for any alleged act or omission and gives written notice to the **Company** with all available particulars, including:

a.  The specific act or omission;

b.  The dates and persons involved;

c.  The identity of anticipated or possible claimants;

d.  The circumstances by which the **Insured** first became aware of the possible **claim**; and

e.  Potential damages or injury.

then any **claim** that is subsequently made against the **Insured** arising out of such act or omission will be deemed to have been made on the date such written notice was received by the **Company**. Said documents and information should be mailed to the **Company** at the following address:

XL Insurance
XL Select Professional - Claims Department
One World Financial Center
200 Liberty Street, 27th floor
New York, NY 10281

**B. Assistance and Cooperation**

1. The **Insured** will cooperate with the **Company** and upon the **Company's** request, attend hearings, depositions and trials and assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits and proceedings in connection with a **claim**.

2. The **Insured** will assist in the enforcement of any right of contribution or indemnity against any person or organization who or which may be liable to any **Insured** in connection with a **claim**.

3. The **Insured** will not, except at the **Insured's** own cost, voluntarily make any payment, assume or admit any liability or incur any expense without the prior written consent of the **Company**.

**C. Action against the Company**

1. No action may be brought against the **Company** unless, as a condition precedent thereto:

   a. The **Insured** has fully complied with all the terms of this policy; and

   b. Until the amount of the **Insured's** obligation to pay has been finally determined either by judgment against the **Insured** after actual trial and appeal or by written agreement of the **Insured**, the claimant and the **Company**.

2. Nothing contained in this policy will give any person or organization the right to join the **Company** as a defendant or co-defendant or other party in any action against the **Insured** to determine the **Insured's** liability.

**D. Bankruptcy**

Bankruptcy or insolvency of the **Insured** or of the **Insured's** estate will not relieve the **Company** of any of its obligations hereunder.

**E. Other Insurance**

This policy is excess over any other valid and collectible insurance, self-insurance or indemnification agreement available to the **Insured**, whether such other insurance or indemnification agreement is stated to be primary, contributory, excess, contingent, self-insured or otherwise.

**F. Subrogation**

In the event of any payment for any **claim** under this policy, the **Company** will be subrogated in the amount of such payment to all the **Insured's** rights of recovery against any person or organization. The **Insured** will execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The **Insured** will do nothing to prejudice such rights.

### G. Changes

Notice to any agent of the **Company** or knowledge possessed by any such agent or by any other person will not effect a waiver or a change in any part of this policy, and will not prevent or preclude the **Company** from asserting or invoking any right or provision of this policy. None of the provisions of this policy will be waived, changed or modified except by a written endorsement issued by the **Company** to form a part of this policy.

### H. Cancellation/Nonrenewal

1. This policy may be cancelled by the **Named Insured** by returning it to the **Company**. The **Named Insured** may also cancel this policy by giving written notice to the **Company** stating at what future date cancellation is to be effective.

2. The **Company** may cancel or nonrenew this policy by sending written notice to the **Named Insured** at the address last known to the **Company**. The **Company** will provide written notice at least 60 days before cancellation or nonrenewal is to be effective. However, if the **Company** cancels this policy because the **Insured** has failed to pay a premium when due, this policy may be canceled by the **Company** by mailing to the **Named Insured** written notice stating when, not less than 10 days thereafter, such cancellation is to be effective. The time of surrender of the policy or the effective date and hour of cancellation stated in the notice will become the end of the **policy period**. Delivery of such written notice either by the **Named Insured** or by the **Company** will be equivalent to mailing.

3. If the **Company** cancels this policy, the earned premium will be computed pro rata. If the **Named Insured** cancels this policy, the **Company** will retain the customary short rate proportion of the premium. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable after cancellation becomes effective, but payment or tender of unearned premium is not a condition of cancellation.

4. The offering of terms and conditions different from the expiring terms and conditions, including limits of liability, deductible or premium, shall not constitute a refusal to renew or a cancellation of this policy.

### I. Territory

This policy applies to an act or omission taking place anywhere in the world provided that any suit is brought against the **Insured** within the United States of America, its territories or possessions, Puerto Rico or Canada.

This policy shall not apply to any risk which would be in violation of the laws of the United States including, but not limited to, U.S. economic or trade sanction laws or export control laws     administered by the U.S. Treasury, State, and Commerce Department.

### J. Named Insured Sole Agent

The **Named Insured** will be the sole agent and will act on behalf of all **Insureds** for the purpose of giving or receiving any notices, any amendments to or cancellation of this policy, for the completing of any applications and the making of any statements, representations and warranties, for the payment of any premium and the receipt of any return premium that may become due under this policy, for the payment of the deductible and the exercising or declining to exercise any right under this policy including the purchase of an **extended reporting period**.

### K. Entire Contract

By acceptance of this policy the **Insured** warrants that:

1. All of the information and statements provided to the **Company** by the **Insured**, including but not limited to, the application and any supplemental information, are true, accurate and complete and will be deemed to constitute material representations made by the **Insured**;

2. This policy is issued in reliance upon the **Insured's** representations;

3. This policy, endorsements thereto, together with the completed and signed application and any and all supplementary information and statements provided by the Insured to the Company (all of which are attached hereto and deemed to be incorporated herein) embody all of the agreements existing between the Insured and the Company and shall constitute the entire contract between the Insured and the **Company**; and

4. Any material misrepresentation or concealment by the **Insured** or the **Insured's** agent will render the policy null and void and relieve the **Company** from all liability herein.

### L.  Notices

Any notices required to be given by the **Insured** will be submitted in writing to the **Company** or its authorized representative at the address specified in the Declarations. If mailed, the date of mailing of such notice will be deemed to be the date such notice was given and proof of mailing will be sufficient proof of notice.

### M.  Assignment

No assignment of interest of the **Insured** under this policy is valid, unless the **Company's** written consent is endorsed hereon.

### N.  Innocent Insureds

Whenever coverage under this policy would be excluded because of dishonest, fraudulent, criminal or malicious acts or omissions, the **Company** agrees that such insurance as would otherwise be afforded under this policy, will be applicable with respect to those **Insureds** who did not personally participate or personally acquiesce in or remain passive after having knowledge of such conduct. Each **Insured** must promptly comply with all provisions of this policy upon learning of any concealment.

## VI.  EXTENDED REPORTING PERIODS

**Extended reporting period** means the period of time after the end of the **policy period** for reporting **claims** to the **Company** that are made against the **Insured** during the applicable **extended reporting period** by reason of an act or omission, which was committed prior to the end of the **policy period** and on or subsequent to the **retroactive date**, and is otherwise covered by this policy.

### A.  Automatic Extended Reporting Period

If this policy is cancelled or nonrenewed by either the **Company** or by the **Named Insured**, the **Company** will provide to the **Named Insured** an automatic, noncancelable **extended reporting period** starting at the termination of the **policy period** if the **Named Insured** has not obtained another policy of errors and omissions insurance within sixty (60) days of the termination of the **policy period**. This automatic **extended reporting period** will terminate after sixty (60) days.

### B.  Optional Extended Reporting Period

1. If this policy is cancelled or nonrenewed by either the **Company** or by the **Named Insured**, then the **Named Insured** will have the right to purchase an optional **extended reporting period** of one or three years. Such right must be exercised by the **Named Insured** within sixty (60) days of the termination of the **policy period** by providing:

   a:  Written notice to the **Company**; and

XLSPMPLPF (04/05)
©**Indian Harbor Insurance Company**                    **Page 9**
CARR  04/24/2007                                                                      Printed in U.S.A.

16

    **b.**  With the written notice, the amount of additional premium described below.

**2.**  The additional premium for the optional **extended reporting period** will be:

    **a.**  For a one (1) year **extended reporting period**, 75% of the annual premium for the policy; or

    **b.**  For a three (3) year **extended reporting period**, 150% of the annual premium for the policy.

**3.**  The first sixty (60) days of the optional **extended reporting period**, if it is purchased, shall run concurrently with the automatic **extended reporting period**.

**C.**  **Extended Reporting Period Limits of Liability**

The limit of liability of the **Company** for all **claims** reported during the automatic and optional **extended reporting periods** will be part of and not in addition to the limits of liability for the **policy period** set forth in Item 4. in the Declarations.

**D.**  **Elimination of Right to Any Extended Reporting Period**

There is no right to any **extended reporting period** if the **Company** cancels or refuses to renew this policy due to:

**1.**  Nonpayment of amounts due under this policy;

**2.**  Noncompliance by the **Insured** with any of the terms and conditions of this policy;

**3.**  Any material misrepresentation or omission in the application or the supplementary information and statements provided by the **Insured** for this policy.

**E.**  **Extended Reporting Period - Not A New Policy**

The **extended reporting period** will not be construed to be a new policy and any **claim** submitted during such period will otherwise be governed by this policy.

# NOTICE TO POLICYHOLDERS

**PRIVACY POLICY**

The XL America, Inc. insurance group (the "Companies"), believes personal information that we collect about our customers, potential customers, and proposed insureds (referred to collectively in this Privacy Policy as "customers") must be treated with the highest degree of confidentiality. For this reason and in compliance with the Title V of the Gramm-Leach-Bliley Act ("GLBA"), we have developed a Privacy Policy that applies to all of our companies. For purposes of our Privacy Policy, the term "personal information" includes all information we obtain about a customer and maintain in a personally identifiable way. In order to assure the confidentiality of the personal information we collect and in order to comply with applicable laws, all individuals with access to personal information about our customers are required to follow this policy.

## Our Privacy Promise

Your privacy and the confidentiality of your business records are important to us. Information and the analysis of information is essential to the business of insurance and critical to our ability to provide to you excellent, cost-effective service and products. We understand that gaining and keeping your trust depends upon the security and integrity of our records concerning you. Accordingly, we promise that:

1. We will follow strict standards of security and confidentiality to protect any information you share with us or information that we receive about you;
2. We will verify and exchange information regarding your credit and financial status only for the purposes of underwriting, policy administration, or risk management and only with reputable references and clearinghouse services;
3. We will not collect and use information about you and your business other than the minimum amount of information necessary to advise you about and deliver to you excellent service and products and to administer our business;
4. We will train our employees to handle information about you or your business in a secure and confidential manner and only permit employees authorized to use such information to have access to such information;
5. We will not disclose information about you or your business to any organization outside the XL insurance group of Companies or to third party service providers unless we disclose to you our intent to do so or we are required to do so by law;
6. We will not disclose medical information about you, your employees, or any claimants under any policy of insurance, unless you provide us with written authorization to do so, or unless the disclosure is for any specific business exception provided in the law;
7. We will attempt, with your help, to keep our records regarding you and your business complete and accurate, and will advise you how and where to access your account information (unless prohibited by law), and will advise you how to correct errors or make changes to that information; and
8. We will audit and assess our operations, personnel and third party service providers to assure that your privacy is respected.

## Collection and Sources of Information

We collect from a customer or potential customer only the personal information that is necessary for (a) determining eligibility for the product or service sought by the customer, (b) administering the product or service obtained, and (c) advising the customer about our products and services. The information we collect generally comes from the following sources:

- Submission – During the submission process, you provide us with information about you and your business, such as your name, address, phone number, e-mail address, and other types of personal identification information;
- Quotes – We collect information to enable us to determine your eligibility for the particular insurance product and to determine the cost of such insurance to you. The information we collect will vary with the type of insurance you seek;

- Transactions – We will maintain records of all transactions with us, our affiliates, and our third party service providers, including your insurance coverage selections, premiums, billing and payment information, claims history, and other information related to your account;
- Claims – If you obtain insurance from us, we will maintain records related to any claims that may be made under your policies. The investigation of a claim necessarily involves collection of a broad range of information about many issues, some of which does not directly involve you. We will share with you any facts that we collect about your claim unless we are prohibited by law from doing so. The process of claim investigation, evaluation, and settlement also involves, however, the collection of advice, opinions, and comments from many people, including attorneys and experts, to aid the claim specialist in determining how best to handle your claim. In order to protect the legal and transactional confidentiality and privileges associated with such opinions, comments and advice, we will not disclose this information to you; and
- Credit and Financial Reports – We may receive information about you and your business regarding your credit. We use this information to verify information you provide during the submission and quote processes and to help underwrite and provide to you the most accurate and cost-effective insurance quote we can provide.

## Retention and Correction of Personal Information

We retain personal information only as long as required by our business practices and applicable law. If we become aware that an item of personal information may be materially inaccurate, we will make reasonable effort to re-verify its accuracy and correct any error as appropriate.

## Storage of Personal Information

We have in place safeguards to protect data and paper files containing personal information.

## Sharing/Disclosing of Personal Information

We maintain procedures to assure that we do not share personal information with an unaffiliated third party for marketing purposes unless such sharing is permitted by law. Personal information may be disclosed to an unaffiliated third party for necessary servicing of the product or service or for other normal business transactions as permitted by law.

We do not disclose personal information to an unaffiliated third party for servicing purposes or joint marketing purposes unless a contract containing a confidentiality/non-disclosure provision has been signed by us and the third party. Unless a consumer consents, we do not disclose "consumer credit report" type information obtained from an application or a credit report regarding a customer who applies for a financial product to any unaffiliated third party for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment. "Consumer credit report type information" means such things as net worth, credit worthiness, lifestyle information (piloting, skydiving, etc.) solvency, etc. We also do not disclose to any unaffiliated third party a policy or account number for use in marketing. We may share with our affiliated companies information that relates to our experience and transactions with the customer.

## Policy for Personal Information Relating to Nonpublic Personal Health Information

We do not disclose nonpublic personal health information about a customer unless an authorization is obtained from the customer whose nonpublic personal information is sought to be disclosed. However, an authorization shall not be prohibited, restricted or required for the disclosure of certain insurance functions, including, but not limited to, claims administration, claims adjustment and management, detection, investigation or reporting of actual or potential fraud, misrepresentation or criminal activity, underwriting, policy placement or issuance, loss control and/or auditing.

## Access to Your Information

Our employees, employees of our affiliated companies, and third party service providers will have access to information we collect about you and your business as is necessary to effect transactions with you. We may also disclose information about you to the following categories of person or entities:

PN CW 02 0505
CARR  04/24/2007

Page 2

- Your independent insurance agent or broker;
- An independent claim adjuster or investigator, or an attorney or expert involved in the claim;
- Persons or organizations that conduct scientific studies, including actuaries and accountants;
- An insurance support organization;
- Another insurer if to prevent fraud or to properly underwrite a risk;
- A state insurance department or other governmental agency, if required by federal, state or local laws; or
- Any persons entitled to receive information as ordered by a summons, court order, search warrant, or subpoena.

Violation of the Privacy Policy

Any person violating the Privacy Policy will be subject to discipline, up to and including termination.

For more information or to address questions regarding this privacy statement, please contact your broker.

PN CW 02 0505                                          Page 3
CARR  04/24/2007

# NOTICE TO POLICYHOLDERS

## U.S TREASURY DEPARTMENT'S OFFICE OF FOREIGN ASSETS CONTROL ("OFAC")

No coverage is provided by this Policyholder Notice nor can it be construed to replace any provisions of your policy. You should read your policy and review your Declarations page for complete information on the coverages you are provided.

This Policyholder Notice provides information concerning possible impact on your insurance coverage due to directives issued by OFAC. **Please read this Policyholder Notice carefully.**

OFAC administers and enforces sanctions policy, based on Presidential declarations of "national emergency". OFAC has identified and listed numerous

- Foreign agents
- Front organizations
- Terrorists
- Terrorist organizations
- Narcotics traffickers

as "Specially Designated Nationals and Blocked Persons". This list can be found on the United States Treasury's web site - http//www.treas.gov/ofac.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance will be immediately subject to OFAC. When an insurance policy is considered to be such a blocked or frozen contract, neither payments nor premium refunds may be made without authorization from OFAC. Other limitations on the premiums and payments also apply.

PN CW 05 0106

Includes copyrighted material of Insurance Services Office, Inc., with its permission

CARR 04/24/2007

# NOTICE TO POLICYHOLDERS

## IMPORTANT INFORMATION TO POLICYHOLDERS - CALIFORNIA

In the event you need to contact someone about this Policy for any reason please contact your agent. If you have additional questions, you may contact the insurance company issuing this Policy at the following address and telephone number:

>XL Insurance
>Seaview House
>70 Seaview Avenue
>Stamford, CT  06902-6040
>1-800-688-1840

If you have a problem with your insurance company, its agent or representative that has not been resolved to your satisfaction, please call or write to the Department of Insurance.

>California Department of Insurance
>Consumer Communications Bureau
>300 South Spring Street, South Tower
>Los Angeles, CA  90013
>
>1-800-927-4357
>213-897-8921 (if calling from within the Los Angeles area)
>1-800-482-4833 (TDD Number)

Written correspondence is preferable so that a record of your inquiry can be maintained. When contacting your agent, company or the Bureau of Insurance, have your Policy Number available.

PN CA 02 0405
CARR  04/24/2007

# IN WITNESS ENDORSEMENT

INDIAN HARBOR INSURANCE COMPANY
ADMINISTRATIVE OFFICE:    SEAVIEW HOUSE
70 SEAVIEW AVENUE
STAMFORD, CT 06902-6040
STATUTORY HOME OFFICE:    CT CORPORATION SYSTEMS
314 EAST THAYER AVENUE
BISMARCK, ND 58501-4018

It is hereby agreed and understood that the following In Witness Clause supercedes any and all other In Witness clauses in this policy.

All other provisions remain unchanged.

IN WITNESS WHEREOF, the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

Dennis P. Kane
President

Kenneth P. Meagher
Secretary

IL MP 9104 0906 IHIC
CARR  04/24/2007

23

ENDORSEMENT #005

This endorsement, effective 12:01 a.m., March 23, 2007 forms a part of Policy No. MPP001614903 issued to CALABASAS FUNDING CORP., DBA CFC MORTGAGE BANKERS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is understood and agreed that the following **EXCLUSIONS** are added to this policy:

Based on or arising out of any defective title or deed;

Based on or arising out of a cease and desist order, the insolvency, bankruptcy, licensing, receivership, liquidation or inability to pay of any insurer, trust, organization or other vehicle directly or indirectly in which any **Insured** has placed or obtained insurance coverage or placed the funds of a client or account;

Based on or arising out of any failure to repurchase any loans;

Based on or arising out of any transaction involving a loan funded in whole or in part with any **Insured's** own funds except for loans that are held for less than 180 days, or any transaction in which any **Insured** has any financial interest as a buyer or seller of real property;

Based on or arising out of any inability or failure of the **Insured** to safeguard funds.

All other provisions of this policy remain unchanged.

XLSPMPL105 (8/03)
CARR  04/24/2007                                   Page 1

**ENDORSEMENT #006**

This endorsement, effective 12:01 a.m., March 23, 2007 forms a part of Policy No. MPP001614903 issued to CALABASAS FUNDING CORP., DBA CFC MORTGAGE BANKERS by Indian Harbor Insurance Company.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This endorsement modifies insurance provided under the following:

**ERRORS AND OMISSIONS POLICY**

In consideration of the premium charged, it is hereby understood and agreed that Section IV., **EXCLUSIONS, G.** is amended to include the following:

3. Nuclear reaction, contamination or radiation, including but not limited to radon, regardless of cause;

4. Whether suddenly or over a long period of time the actual, alleged or threatened emission, discharge, dispersal, seepage, release or escape of **pollutants**; or any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **pollutants**;

5. Lead, whether or not the lead was at any time: airborne as a particle; contained in or formed a part of a product, structure or other real or personal property; ingested or inhaled or transmitted in any fashion; or found in any form whatsoever;

6. Asbestos, whether or not the asbestos was at any time airborne as a fiber, particle or dust; contained in or formed a part of a product, structure or other real or personal property; carried on clothing; ingested or inhaled or transmitted in any fashion; or found in any form whatsoever;

7. The actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any **fungi** or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to the injury or damage; or any injury, damage, payments, costs or expense incurred as a result of any testing for, monitoring, removal, containment, treatment, detoxification, neutralization or cleanup of **fungi** or bacteria.

It is further understood and agreed that Section III., **DEFINITIONS**, is amended to include the following definition:

**Fungi** means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by **fungi**.

All other provisions of this policy remain unchanged.

XLSPMPL145 (8/03)                                                          Printed in U.S.A.
CARR  04/24/2007

ENDORSEMENT #007

This endorsement, effective 12:01 a.m., March 23, 2007 forms a part of Policy No. MPP001614903 issued to
CALABASAS FUNDING CORP., DBA CFC MORTGAGE BANKERS by Indian Harbor Insurance Company

## SERVICE OF PROCESS

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the
Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.
The Company further designates:

> John Oster
> 1990 North California Boulevard
> Suite 740
> Walnut Creek, CA  94596

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his
successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit
or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure
and this contract of insurance.

All other terms and conditions of this policy remain unchanged.

_____
(Authorized Representative)

IHIC-CASOP (02/07)
CARR  04/24/2007

26

® JS 44 (Rev. 12/07)  **CIVIL COVER SHEET**

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| INDIAN HARBOR INSURANCE COMPANY, a North Dakota corporation | CALABASAS FUNDING CORPORATION dba CFC MORTGAGE BANKERS, a California corporation |

| (b) County of Residence of First Listed Plaintiff Fairfield County, Connecticut <br> (EXCEPT IN U.S. PLAINTIFF CASES) | County of Residence of First Listed Defendant Ventura County, California <br> (IN U.S. PLAINTIFF CASES ONLY) <br> NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. |
|---|---|

| (c) Attorney's (Firm Name, Address, and Telephone Number) <br> PETER SCHWARTZ, ESQ. <br> CHRISTOPHER R. WAGNER, ESQ. <br> GORDON & REES LLP <br> 633 WEST FIFTH STREET, SUITE 4900 <br> LOS ANGELES, CA 90071 <br> 213-576-5000 | Attorneys (If Known) |
|---|---|

E-FILING

ADR

C08 03272 PVT

**I. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

- [ ] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question (U.S. Government Not a Party)
- [X] 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [X] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [X] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [X] 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury— Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 | | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 330 Federal Employers' Liability | | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 340 Marine | **PERSONAL PROPERTY** | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 350 Motor Vehicle | [ ] 371 Truth in Lending | [ ] 690 Other | | [ ] 490 Cable/Sat TV |
| [ ] 160 Stockholders' Suits | [ ] 355 Motor Vehicle Product Liability | [ ] 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 190 Other Contract | [ ] 360 Other Personal Injury | [ ] 385 Property Damage Product Liability | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| [ ] 195 Contract Product Liability | | | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 196 Franchise | | | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [ ] 441 Voting | [ ] 510 Motions to Vacate Sentence | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 220 Foreclosure | [ ] 442 Employment | **Habeas Corpus:** | [ ] 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | [ ] 893 Environmental Matters |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 894 Energy Allocation Act |
| [ ] 240 Torts to Land | [ ] 444 Welfare | [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | [ ] 895 Freedom of Information Act |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities - Employment | [ ] 540 Mandamus & Other | **IMMIGRATION** | | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities - Other | [ ] 550 Civil Rights | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 440 Other Civil Rights | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee | | |
| | | | [ ] 465 Other Immigration Actions | | |

**V. ORIGIN** (Place an "X" in One Box Only)

- [X] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from another district (specify)
- [ ] 6 Multidistrict Litigation
- [ ] 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. section 1332

Brief description of cause:
Declaratory Relief Re: Insurance Contract

**VII. REQUESTED IN COMPLAINT:**
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $   CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

**VIII. RELATED CASE(S) IF ANY** (See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 7/7/08   SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

American LegalNet, Inc.
www.FormsWorkflow.com